1 | JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
2 | ERIC J. BUESCHER (SBN 271323)
ebuescher@cpmlegal.com
3 | KELSEY J. MOE (SBN 328815)
kmoe@cpmlegal.com
4 | **COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
5 | 840 Malcolm Road
Burlingame, CA 94010
6 | Telephone: (650) 697-6000
Facsimile: (650) 697-0577
7 |
8 | *Attorneys for Relator Bell Hill, LLC*

**FILED**

Jul 06, 2020

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

# SEALED

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

UNTIED STATES OF AMERICA *ex rel.* BELL HILL, LLC,

　　　　　Plaintiffs,

　　　v.

JOHN SEASHOLTZ; SWEETWOOD FARM CO. LLC; MENDOTA LAND COMPANY; SWEETWOOD FARM INC.; SEASHOLTZ CO. LLC; and BANK OF THE WEST,

　　　　　Defendants.

CASE NO.　1:20-cv-0942 DAD BAM

**COMPLAINT FOR VIOLATION OF FALSE CLAIMS ACT**

**DEMAND FOR JURY TRIAL**

**[FILED IN CAMERA AND UNDER SEAL**

**PURSUANT TO 31 U.S.C. § 3730(b)(2)]**

**COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

I.      INTRODUCTION ......................................................................................................... 1

II.     JURISDICTION AND VENUE .................................................................................... 2

III.    PARTIES ...................................................................................................................... 2

IV.     THE FALSE CLAIMS ACT ........................................................................................ 4

V.      THE CARES ACT AND PPP PROGRAM ................................................................... 5

VI.     THE SEASHOLTZ DEFENDANTS' DID NOT QUALIFY FOR THE LOANS ................... 9

      A.      Background on the Seasholtz Businesses and Their Relationship with Bank of the West ........................................................................................................................ 9

      B.      The Seashotlz Businesses had Access to Tens of Millions of Dollars in Cash, Liquid Assets, Prepaid Expense Accounts, and Low Interest, Pre-Approved Capital............. 12

VII.    THE SEASHOLTZ DEFENDANTS MADE MATERIALLY FALSE STATEMENTS IN APPLYING FOR PPP LOANS ................................................................................... 13

VIII.   CAUSES OF ACTION ............................................................................................... 15

      First Cause of Action
            31 U.S.C. § 3729(a)(1)(A)
            Submission of a False Claim
            *(Against Seasholtz Defendants)* .................................................................. 15

      Second Cause of Action
            31 U.S.C. § 3729(a)(1)(B)
            Making False Statement in Support of a Claim
            *(Against Seasholtz Defendants)* .................................................................. 16

      Third Cause of Action
            31 U.S.C. § 3729(a)(1)(G)
            Improper Retention of Money Owed to the Government
            *(Against Seasholtz Defendants)* .................................................................. 17

      Fourth Cause of Action
            31 U.S.C. § 3729(a)(1)(C)
            Conspiracy to Violate the False Claims Act
            *(Against all Defendants)* ............................................................................ 17

IX.     PRAYER FOR RELIEF .............................................................................................. 18

X.      JURY DEMAND ........................................................................................................ 19

## I.    INTRODUCTION

1.     The novel coronavirus has wrought devastation throughout our country. In response, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in March 2020. The law was intended to provide emergency financial assistance to Americans who are suffering from the economic impact of the virus.

2.     One highly publicized portion of the aid was the Paycheck Protection Program ("PPP"). Congress initially authorized $349 billion in forgivable loans to small business, and then in April 2020 authorized more than $300 billion in additional funding for PPP.

3.     Relator Bell Hill, LLC brings this lawsuit under the False Claims Act to redress the Seasholtz Defendants' improper receipt and retention of PPP loans, as well as to hold the Seasholtz Defendants and Bank of the West liable for conspiring to obtain millions of dollars of taxpayer funds to which they were not entitled. As a result of the defendants' fraud conspiracy, they received four PPP loans totaling $3,557,990.

4.     Not a penny of these loans were necessary, and defendants made false certifications of need under the PPP program and the CARES Act. These false statements were material in getting the loan approved. These statements were objectively false, were knowingly so, and the conspiring bank knew of their falsity as well. Only by making these false certifications and statements were the defendants able to claim eligibility for the loan program and, most tantalizing, for eventual forgiveness of the loans. In short, the loans were not needed, yet resulted in $3.5mm of taxpayer dollars being directed to the Seasholtz Defendants to pay down lines of credit, reduce their interest expenses, and profit off the PPP program, all with the opportunity to have the principal and interest of those loans forgiven.

5.     The loans were funded through Bank of the West. While lenders are nominally entitled to rely on representations made to them by borrowers, in this case Bank of the West knew the Seasholtz entities were not eligible for PPP loans. Despite this knowledge, the Bank's representatives worked with, assisted, aided, and conspired with, the Seasholtz's and their entities in applying for, receiving, funding, and ultimately potentially obtaining forgiveness of the loan.

**COMPLAINT**                                                                                          1

## II.   JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

7.      This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because that section authorizes nationwide service of process and because Defendants have minimum contacts with the United States.  Moreover, Defendants can be found in and have transacted business in the Eastern District of California.

8.      Venue is proper in the Eastern District of California pursuant to 28 U.S.C. §§ 1391(b) and 1395(a) and 31 U.S.C. § 3732(a) because Defendants can be found in and/or transact or have transacted business in this district.  At all times relevant to this Complaint, Defendants regularly conducted, and continue to conduct, substantial business within this district and/or maintain employees and offices in this district. The events that gave rise to this action occurred in this district.

## III.   PARTIES

9.      Relator BELL HILL, LLC files this action on behalf of the United States pursuant to the False Claims Act. BELL HILL, LLC is a Florida limited liability. From approximately 2012 through February 2020, the Manager of Bell Hill, LLC, Phil Maxwell worked for the Seasholtzes and their companies as a consultant, and Bell Hill was paid by Defendant Sweetwood Farm, Inc. He consulted on agricultural operations and accounting. Mr. Maxwell has over fifty years of experience working in agricultural operations, accounting, and finance. Mr. Maxwell has an undergraduate degree in agricultural economics from UC Davis and an MBA in accounting from Stanford University. Mr. Maxwell has personal knowledge of the facts alleged herein regarding the Seasholtz Defendants.  Mr. Maxwell is an original source of the information contained herein. At the time of filing this lawsuit, the fact the Seasholtz companies had received a PPP loan, and the fact that they were ineligible for receiving a PPP loan were not publicly disclosed.

10.     Defendant SWEETWOOD FARM CO. LLC ("SF LLC") is a California LLC located in Fresno, California. SF LLC is a service company that performs management and administration services for the Seasholtz companies. SF LLC maintains a payroll and owns a home that is rented to

1   the Seasholtz's son. On May 7, 2020, SF LLC received funds from a PPP loan in the amount of

2   $472,495.

3   11.   Defendant MENDOTA LAND COMPANY ("MLC") is a SUB S California

4   corporation located in Fresno, California. MLC is a land, equipment, and packing house owner as

5   well as a crop producer. MLC maintains a payroll. On May 5, 2020, MLC received funds from a PPP

6   loan in the amount of $469,995.

7   12.   Defendant SWEETWOOD FARM INC. ("SFI") is a SUB S California corporation

8   located in Fresno, California. SFI leases land from MLC and Pappas Land Company (*see* ¶ 14.a.,

9   infra) and Defendant MLC and conducts the business of packing, selling, and shipping fresh tomatoes

10  produced by the Seasholtz entities. SFI maintains a payroll. On May 6, 2020, Defendant SFI received

11  funds from a PPP loan in the amount of $2,000,000.

12  13.   Defendant SEASHOLTZ CO. LLC ("SEA CO") is a California LLC located in

13  Fresno, California. SEA CO is a farm operations service company. It has no land or equipment. SEA

14  CO is also the general partner of the JV Seasholtz Family Limited Partnership. SEA CO performs

15  farming and harvest services for the landowning companies controlled by the Seasholtzes. SEA CO

16  maintains a payroll. On April 27, 2020, SEA CO received funds from a PPP loan in the amount of

17  $625,000.

18  14.   Defendant JOHN SEASHOLTZ and his wife Vicky Seasholtz own and control

19  Defendants SF LLC, MLC, SFI, and SEA CO. The defendant businesses are all pass through entities

20  to a single proprietorship controlled by John and Vicky Seasholtz ("JOS").[1] JOS owns and leases

21  land, owns equipment, and produces crops. It does not maintain a payroll. JOS controls the finances

22  of all of the Seasholtz entities. It maintains and controls a line of credit and borrowing relationship

23  with Defendant Bank of the West. In addition to the entities identified as Defendants, the Seasholtzes

24  also own and control:

25

26  _____

[1] Upon information and belief, John Seasholtz has a power of attorney for his wife. John Seasholtz

27  makes decisions for her in connection with the sole proprietorship and as partners in the John and
    Vicky Seasholtz Family Limited Partnership. Any decisions or certifications made by Vicky

28  Seasholtz in connection with the PPP loans obtained by the Seasholtz entities were made by John
    Seasholtz on her behalf.

**COMPLAINT**                                                                                3

a.    Pappas Land Company ("Pappas") is SUB S California corporation. Pappas is a land and equipment owner, a packing house owner, and a crop producer.  Pappas does not maintain a payroll.

b.    Sweetwood Marketing, Inc. ("SMI") is a C California corporation. SMI handles export sales and does not maintain a payroll.

c.    JV Seasholltz Family Limited Partnership ("JVSFLP") is a California limited partnership. It owns land and equipment, leases land, and produces crops. JVSFLP does not maintain a payroll. The partners of JVSFLP are John and Vicky Seasholtz and SEA CO.

In total, the Seasholtzes own and control at least eight entities and have effective control over at least two additional entities nominally owned by their children.

15.      Each of the Seasholtz entities identified in paragraphs 10-14 operate on a "zero-balance" financial system through an agreement with Bank of the West. Pursuant to this system, the Bank zeroes balances on a set of accounts on a nightly basis, with any balance cleared to or from a master account. The master account is the JOS proprietorship account, and has access to a line of credit through Bank of the West to cover any balances. Excess cash from any of the accounts is first used to pay down any existing balance on the line of credit.

16.      Defendant Bank of the West is a California Corporation located in San Francisco, California. Bank of the West maintains offices throughout this district, including its Agricultural Lending Department in Fresno where the Seasholtzes have had a long-term banking and financial management relationship.

**IV.**     **THE FALSE CLAIMS ACT**

17.      The federal False Claims Act (the "FCA" of "Act") was originally enacted during the Civil War.  Congress substantially amended the Act in 1986 – and, again, in 2009 and 2010 – to enhance the ability of the United States Government to recover losses sustained as a result of fraud against it.  The Act was amended after Congress found that fraud in federal programs was pervasive and that the Act, which Congress characterized as the primary tool for combating government fraud, was in need of modernization.  Congress intended that the amendments would create incentives for

individuals with knowledge of fraud against the Government to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit legal resources to prosecuting fraud on the Government's behalf.

18.     The FCA prohibits, inter alia: (a) knowingly presenting (or causing to be presented) to the federal government a false or fraudulent claim for payment or approval; (b) knowingly making or using, or causing to be made or used, a false or fraudulent record or statement material to a false or fraudulent claim; (c) knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the Government; and (d) conspiring to violate any of these sections of the FCA.  31 U.S.C. §§ 3729(a)(1)(A)-(C), and (G).  Any person who violates the FCA is liable for a civil penalty of thousands of dollars for each violation, plus three times the amount of the damages sustained by the United States.  31 U.S.C. § 3729(a)(1).

19.     The FCA allows any person having information about an FCA violation to bring an action on behalf of the United States, and to share in any recovery.  The FCA requires that the Complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time) to allow the government time to conduct its own investigation and to determine whether to join the suit.

## V.     THE CARES ACT AND PPP PROGRAM

20.     The CARES Act was enacted in March 2020 to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. One piece of the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through the PPP. In April 2020, Congress authorized over $300 billion in additional PPP funding.

21.     In order to obtain a PPP loan, a business had to qualify as a small business, and was required submit a PPP loan application. The application is signed by an authorized representative of the business. The application requires the business to acknowledge the program rules and make affirmative certifications to be eligible to obtain the PPP loan and receive funds.

22.     The certifications made by applying businesses in the application are below:

**Paycheck Protection Program**
**Borrower Application Form**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

CERTIFICATIONS AND AUTHORIZATIONS

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals:  I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

CERTIFICATIONS

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

_____ The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

_____ Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

_____ The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

_____ The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

_____ I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

_____ During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

_____ I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

_____ I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

_____          _____
Signature of Authorized Representative of Applicant          Date

23.     Most relevant here, to be eligible to receive money from the program, the business must make a good faith determination that "current economic uncertainty makes this loan necessary

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

to support the ongoing operations of the Applicant." This means that entities are only eligible for PPP loans where obtaining the money *through the PPP program is a necessity*. As more fully explained by the Department of Treasury in its Frequently Asked Questions website related to the PPP program (available at https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf, last accessed June 25, 2020):

> **31. Question:** Do businesses owned by large companies with adequate sources of liquidity to support the business's ongoing operations qualify for a PPP loan?
>
> **Answer:** In addition to reviewing applicable affiliation rules to determine eligibility, all borrowers must assess their economic need for a PPP loan under the standard established by the CARES Act and the PPP regulations at the time of the loan application. Although the CARES Act suspends the ordinary requirement that borrowers must be unable to obtain credit elsewhere (as defined in section 3(h) of the Small Business Act), borrowers still must certify in good faith that their PPP loan request is necessary. Specifically, before submitting a PPP application, all borrowers should review carefully the required certification that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." Borrowers must make this certification in good faith, taking into account their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business. For example, it is unlikely that a public company with substantial market value and access to capital markets will be able to make the required certification in good faith, and such a company should be prepared to demonstrate to SBA, upon request, the basis for its certification.
>
> Lenders may rely on a borrower's certification regarding the necessity of the loan request. Any borrower that applied for a PPP loan prior to the issuance of this guidance and repays the loan in full by May 7, 2020 will be deemed by SBA to have made the required certification in good faith.[11]

Because this response was added on April 23, 2020, Treasury provided a safe harbor to businesses who received but did not *need* a PPP loan to repay those loans with no consequence if they did so by the deadline. However, entities that did not repay their loan, but instead sought forgiveness under the PPP program, are not protected by the safe harbor.

24.     The applicant is also required to identify whether "the applicant or any owner of the Applicant [is] an owner of any other business, or have common management with any other business?" PPP borrower application Question 3. Any such business must be disclosed as part of the application.

25.     In addition the applicant must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP as well as to determine eligibility in the program. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

26.     A business's PPP loan application is received and processed, in the first instance, by a participating financial institution, then transmitted, for further review, to the Small Business Administration ("SBA") to assess the applicant's eligibility. If a PPP loan application is approved, the participating financial institution funds the PPP loan directly.

27.     PPP loan proceeds must be used by the business on certain permissible expenses -- payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time and uses a minimum percentage of those funds on payroll expenses.

28.     Borrowers may apply for and receive forgiveness of the principal and interest on their loans if they use the funds for certain qualifying business expenses. In order for a loan to be forgiven, subject to certain additional requirements, at least 60% of the proceeds of the loan must be spent on payroll costs, while the remainder of the forgiven amount must be spent on business mortgage interest payments, business rent or lease payments, or business utility payments.

29.     In applying for forgiveness of a loan, borrowers again make certifications and representations to the government that are material and binding. The certifications made in the forgiveness application including the following:

__By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:__

The authorized representative of the Borrower certifies to all of the below by **initialing** next to each one.

_____  The dollar amount for which forgiveness is requested:
- was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);
- includes all applicable reductions due to decreases in the number of full-time equivalent employees and salary/hourly wage reductions;
- includes payroll costs equal to at least 60% of the forgiveness amount;
- if a 24-week Covered Period applies, does not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual; and
- if the Borrower has elected an 8-week Covered Period, does not exceed 8 weeks' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $15,385 per individual.

_____  I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

_____  The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.

## VI.    THE SEASHOLTZ DEFENDANTS' DID NOT QUALIFY FOR THE LOANS

### A.    Background on the Seasholtz Businesses and Their Relationship with Bank of the West

30.    The Seasholtzes grow, harvest, process, pack, ship, and sell crops, primarily processing and fresh tomatoes along with processing onions, garlic, and cotton. They have contracts for the sale of the processing of crops and sell packed fresh tomatoes on a day-to-day basis from June to October to customers throughout the United States. The Seasholtz's fresh tomato brand is "Red Rooster." They own roughly 5,600 acres, and lease roughly 430 acres of farm land in Fresno, Merced, San Benito, and Santa Clara Counties. They have been farming for over forty years.

31.    Because the Seasholtzes control the entire process and business they are able to consistently project future expenses and income. As a seasonal business with substantial accessible cash and liquidity, they prepay substantial portions of their expenses in December of each year. In December of 2019 the Seasholtzes purchased and paid for over $10,000,000 in inputs for the 2020 production year. The inputs, among other things, include fuel, chemicals, cartons, seed, plants, insurance, and rent.

32.    The Seasholtzes own and lease the land that is farmed, the equipment to farm it, and the packing house for the fresh tomatoes. They pack, market, sell, and ship the crops to customers

throughout California and the United States. All of the operation, financing is run through the JOS proprietorship accounts.

33.     The companies use a "zero-balance" financial system. This is an agreement with Defendant Bank of the West to zero balances nightly on a set of accounts with any balance cleared to or from a master account. The master account must cover any negative balances in the system nightly. In most cases the master account is linked to a line of credit.

34.     For the Seasholtzes, the master account for the zero-balance system is the JOS proprietorship account. Each of the Defendant entities has a commercial account for checks and receipts. Defendants SEA CO, MLC, and SFI have separate accounts for payroll checks that are also tied to the zero-balance system. Defendant SF LLC has a single account for both regular checks/expenses and for payroll that is tied to the zero-balance system. SMI does not have any accounts tied to the zero-balance system.

35.     Each of the Defendant entities also have accounts that are dedicated cash accounts that are *not* tied to the zero-balance system. This is cash which the Seasholtz's have domiciled in a controlled entity for some reason. These accounts are primarily held in either CDs or through investment accounts at Merrill Lynch. There is generally little to no activity in these accounts. The proprietorship also has some of these accounts. The "dedicated cash" accounts are not linked to the zero-balance system, where the "operating accounts" for each entity are.

36.     Customarily, starting in mid-January and continuing through June, the Seasholtz businesses incur costs that result in an increase in the amount owed on the Seasholtz's line of credit. In short, they expect to be revenue negative during this time period each year. And most years, the amount of the increase on the line of credit is around $4,000,000.

37.     The Seasholtzes have a significant and long-standing relationship with Bank of the West for borrowing of operating capital. All the zero-balance accounts described above are held at Bank of the West.

38.     John and Vicky Seasholtz's personal line of credit with Bank of the West for 2020 operations is for $21 million. Their proprietorship account is the master account for the zero-balance system. All other operating accounts are linked to this master account with negative balances covered

1  automatically each night from the Seasholtz master account and any positive balances transferred

2  nightly into that master account.  The Seasholtz master account is linked to their $21 million line of

3  credit and any negative balance as a result of all the transfers out nightly are covered by the line of

4  credit. Conversely a positive balance which may result in any account is transferred to the proprietor

5  account and if it results in a positive balance, is paid automatically against the line of credit.

6       39.    To obtain this immediate borrowing capacity, the Seasholtzes provide a

7  comprehensive single budget which includes the operation of all the companies including their

8  children's crops and they provide a personal guarantee to Bank of the West. Their children also

9  receive a line of credit of $1,000,000. John Seasholtz also submits a monthly position report which

10 sets forth the global position of the Seasholtz businesses, including the two businesses owned by his

11 children. All of the information about the financial state of the Seasholtz businesses was known to

12 Bank of the West prior to any submission of a PPP loan application. Despite Bank of the West's

13 knowledge that a PPP loan was not necessary for the Seasholtzes and their entities, in March and

14 April 2020, they agreed to work with the Seasholtzes to obtain PPP loans, and took steps to assist in

15 preparation of the application and follow up calls with the SBA in order to approve and fund the

16 loans.

17      40.    At the time of the loan application, Bank of the West was aware that the Seasholtz

18 companies did not need the loan, had adequate cash and substantial access to capital, yet worked with

19 the John Seasholtz in order to complete the loan application. The Seasholtz's primary contact at Bank

20 of the West for this project was Rod Krouskup.

21      41.    After the application was submitted, SBA loan evaluators had questions about the

22 request. The Seasholtzes, Bank of the West, and SBA evaluators participated in a call on or around

23 April 8, 2020. Grayson Parley, a staff accountant for Seasholtz, gathered information in coordination

24 with Bank of the West and the Seasholtz entities. As a result of the additional information provided

25 by Seasholtz and Bank of the West, the PPP loans were approved and funded.

26 / / /

27 / / /

28 / / /

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**B.**    **The Seashotlz Businesses had Access to Tens of Millions of Dollars in Cash, Liquid Assets, Prepaid Expense Accounts, and Low Interest, Pre-Approved Capital**

42.    The Seasholtz businesses did not close as a result of the COVID-19 pandemic or the state of California's shelter in place orders. As an agricultural business, their work was essential.

43.    As a result of the substantial cash, the fact the business is essential and did not close, the significant access to capital and liquidity, the Seasholtz companies were never at any risk of closure or significantly reduced operations that would have risked the companies' ongoing ability to operate.

44.    On March 20, 2020, five days before CARES Act was passed, but at a time when the provisions of the program were known, $300,000 was transferred out of MLC Institutional Fund account, leaving a balance of $183,582. The money was deposited into the MLC general operating account. Defendants' Quickbooks system reflects a zero-balance transfer of the money from MLC to the JOS proprietorship master account.

45.    Also on March 20, 2020 Defendants transferred $1,520,665 from SFI's Merrill Lynch account, leaving a balance of $1,868,284. The money was deposited into SFI's general operating account. Defendants' Quickbooks system reflects a zero-balance transfer of the money from SFI to the JOS proprietorship master account.

46.    As of March 31, 2020, the Seasholtz entities had over $10 million of cash, $13 million available from their line of credit, approximately $10 million available in a Farm Credit Revolver Reserve, and roughly $7 million in prepaid supplies and inventory. The Farm Credit Revolver Reserve is also immediately accessible. It is secured by the land owned by the JVSFLP, the MLC, and Pappas Land Company.

47.    Thus, in total, as of late March 2020, the Seasholtzes had enough cash to continue to operate their businesses, had prepaid substantial expenses for the upcoming months, and had and roughly $23 million accessible in borrowing capacity, over half of which could be drawn simply by any of the Seasholtz entities simply by writing a check from any of their various operating accounts.

## VII.   THE SEASHOLTZ DEFENDANTS MADE MATERIALLY FALSE STATEMENTS IN APPLYING FOR PPP LOANS

48.     SFI, SF LLC, SEA CO, and MLC all applied for PPP loans through Bank of the West in April 2020. At that time, Bank of the West was the Seashotlz's SBA loan agent and represented their businesses for banking purposes.

49.     The Seasholtzes, and Defendants SFI, SF LLC, SEA CO, and MLC made materially false certifications in applying for the loans.

50.     First, in applying for the PPP loans, each of the four Defendant entities that received the loans misrepresented its eligibility for the program. MLC, SFI, SF LLC, and SEA CO were all adequately capitalized, had access to cash from the zero-balance account, could draw in the Seasholtz's master proprietorship account simply by writing a check, and had prepaid significant expenses for 2020 in December of 2019.

51.     As a result, they were not eligible for the loans.

52.     Second, upon information and belief, Defendants misrepresented their affiliated entities that were required to be disclosed under the application. In submitting their application, Defendants provided an "Addendum A" to Bank of the West. This document should have listed all affiliated owners and entities under common ownership. Yet the Addendum obtained by Mr. Maxewll only listed SFI, SF LLC, MLC, and SEA CO, leaving out the JOS proprietorship, the JVS FLP, Pappas, and Sweetwood Marketing. Upon information and belief, this addendum was submitted with the loan application. This made the application materially incomplete.

53.     Concealing this information was important as it hid the existence of the JOS proprietorship account, the JVS FLP, Pappas, and the Seasholtz's individual accounts, to which these entities had access.

54.     Further, Defendants misrepresented the number of employees they had. In "Addendum A," defendants disclosed that there were 474 total employees at the four identified entities, including labor contractors and full-time employees. Upon information and belief, after submitting the application, in a draft of an email prepared by Grayson Parley, defendants concluded that when they looked at their actual payroll, they were "over the threshold of 500 people."

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

55.     Further evidence of the Seasholtz's and Bank of the West illegal conspiracy is the amount of Defendant SFI's loan application. Shortly after the passage of the CARES ACT the SBA provided advice that loans of $2,000,000 or less would be deemed to be certified in "good faith" and exempt from SBA audit. Relator believes that the calculated loan amount for Defendant SFI would have been greater than $2,000,000 but was limited to that amount in an attempt to avoid scrutiny.

56.     In order to create the illusion the funds were properly used, the Seasholtzes made a journal entry in the amount of 75% of the funds from the loans for Defendants SEA CO, MLC, and SFI to their respective separate payroll accounts. Each of these three accounts are tied to the zero-balance system. The reality is that, despite the journal entries disguising the location of the funds to "payroll" expenses, the cash was transferred to the JOS proprietorship account, not to any of the operating payroll accounts. No similar journal entry was made for the loan to SF LLC.

57.     First, the funds were used to reduce outstanding principal and interest debt on the Seasholtz's line of credit. This is not a qualifying expense, no matter how it is reflected on the books of the Seasholtz's businesses.

58.     Second, all of the land lease payments owed by any of the borrowers were simply owed to other Seasholtz controlled entities. Additionally, the vast majority of the lease payments owed through at least June 2020 had been prepaid.

59.     Third, many operational costs, with an estimated balance of $7,000,000 at March 31, 2020, remained prepaid at the time of the Seasholtz entities application, eliminating them from consideration in eligibility for necessity of the PPP loans

60.     At the time of filing this action, the Seasholtzes have not, to Relator's knowledge, made a request for forgiveness of their PPP loans. Upon information and belief, they plan to do so, and if in seeking forgiveness of their loans, Defendants certify that they spent the funds on qualifying business expenses, such a certification will be false. At the time the loans were funded, the zero-balance system used by the Seasholtzes meant that the cash that came in was cleared into the JOS account and used to pay down the outstanding balance on their line of credit. Moreover, with the establishment of the intentions of the Seasholtzes to apply for forgiveness of the PPP loans

61.     In short, the Seasholtz's businesses did not need loans, did not have any appreciable increased risk of failure, had sufficient cash to cover all planned expenses during the time which the loan funds were required to be used, and used the ill-gotten proceeds of the PPP loans to pay down their personal line of credit. Bank of the West knew all of this yet agreed with the Seasholtzes to work with them to obtain PPP loans, and then funded the PPP loans after they were wrongly approved.

62.     The money made available in the PPP program was designed to help small businesses whose existence and operations were at risk of ending. Widespread small business closures have a devastating effect on the economy, local communities, and individuals and their families. By misrepresenting eligibility for a loan, the Seasholtzes obtained $3.5 million in funds that were not available for dozens of others who actually needed the money.

63.     The Seasholtzes and Bank of the West violated the False Claims Act by making false claims for funds through PPP loans, making false statements in support those applications and claims, retaining funds which they were required to return, using the proceeds of the loans for ineligible expenses despite promises to the contrary, and conspiring to obtain the PPP loans.

**VIII.   <u>CAUSES OF ACTION</u>**

**<u>First Cause of Action</u>**

**31 U.S.C. § 3729(a)(1)(A)**

**Submission of a False Claim**

***(Against Seasholtz Defendants)***

64.     Relator realleges and incorporates by reference the allegations contained in all paragraphs of the Complaint as if fully set forth herein.

65.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, as amended.

66.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the United States Government for payment or approval.

67.     The Government, unaware of the falsity funded PPP loans to be paid to the Seasholtz entities that would not have been funded or paid but for Defendants' illegal conduct.

**COMPLAINT**                                                                          15

68.     By reason of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

69.     Additionally, the United States is entitled to the maximum penalty permitted for each and every violation alleged herein.

70.     Wherefore, Relator prays for relief as set forth below.

## Second Cause of Action

## 31 U.S.C. § 3729(a)(1)(B)

## Making False Statement in Support of a Claim

### (Against Seasholtz Defendants)

71.     Relator realleges and incorporates by reference the allegations contained in all paragraphs of the Complaint as if fully set forth herein.

72.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq., as amended.

73.     By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims.

74.     By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims.

75.     The Government, unaware of the falsity funded PPP loans to be paid to the Seasholtz entities that would not have been funded or paid but for Defendants' illegal conduct.

76.     By reason of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

77.     Additionally, the United States is entitled to the maximum penalty permitted for each and every violation alleged herein.

78.     Wherefore, Relator prays for relief as set forth below.

/ / /

/ / /

/ / /

/ / /s

**Third Cause of Action**

**31 U.S.C. § 3729(a)(1)(G)**

**Improper Retention of Money Owed to the Government**

*(Against Seasholtz Defendants)*

79.     Relator realleges and incorporates by reference the allegations contained in all paragraphs of the Complaint as if fully set forth herein.

80.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq., as amended.

81.     By virtue of the acts described above, Defendants knowingly concealed overpayments from the United States Government and failed to remit such overpayments.

82.     The Government, unaware of the falsity funded PPP loans to be paid to the Seasholtz entities that would not have been funded or paid but for Defendants' illegal conduct.

83.     By reason of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

84.     Additionally, the United States is entitled to the maximum penalty permitted for each and every violation alleged herein.

85.     Wherefore, Relator prays for relief as set forth below.

**Fourth Cause of Action**

**31 U.S.C. § 3729(a)(1)(C)**

**Conspiracy to Violate the False Claims Act**

*(Against all Defendants)*

86.     Relator realleges and incorporates by reference the allegations contained in all paragraphs of the Complaint as if fully set forth herein.

87.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq., as amended.

88.     By virtue of the acts described above, Defendants, their agents, employees and other co-conspirators knowingly conspired to submit false claims to the United States, make or use false

1   records or statements material to false or fraudulent claims, and to conceal and fail to remit

2   overpayments from the United States.

3          89.    The Government, unaware of the falsity funded PPP loans to be paid to the Seasholtz

4   entities that would not have been funded or paid but for Defendants' illegal conduct.

5          90.    By reason of Defendants' acts, the United States has been damaged, and continues to

6   be damaged, in a substantial amount to be determined at trial.

7          91.    Additionally, the United States is entitled to the maximum penalty permitted for each

8   and every violation alleged herein.

9          92.    Wherefore, Relator prays for relief as set forth below.

10  **IX.    <u>PRAYER FOR RELIEF</u>**

11         WHEREFORE, Relator prays for judgment against the Defendants as follows:

12         1.     That this Court enter judgment against Defendants in an amount equal to three times

13  the amount of damages the United States has sustained because of Defendants' actions, plus the

14  maximum civil penalty for each violation of 31 U.S.C. § 3729;

15         2.     That Relator be awarded the maximum amount allowed pursuant to § 3730(d) of the

16  False Claims Act;

17         3.     That Relator be awarded all costs of this action, including attorneys' fees and

18  expenses; and

19         4.     That Relator recover such other relief as the Court deems just and proper.

20  Dated: July 6, 2020              **COTCHETT, PITRE & McCARTHY, LLP**

21

22                                  By: _____
                                        JUSTIN T. BERGER
23                                      ERIC J. BUESCHER
                                        KELSIE J. MOE
24
                                    *Attorneys for Relator Bell Hill, LLC*
25

26

27

28

**X.**     **JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable

Dated: July 6, 2020                **COTCHETT, PITRE & McCARTHY, LLP**

By: _____

JUSTIN T. BERGER
ERIC J. BUESCHER
KELSIE J. MOE

*Attorneys for Relator Bell Hill, LLC*

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP